IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:18CV716 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $7,502.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

**<u>VERIFIED COMPLAINT OF FORFEITURE</u>**

NOW COMES the plaintiff, United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, or represents proceeds traceable to such an exchange.

2. This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or is derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically the exchange of a controlled substance in violation of state and federal law.

3. The defendant property is $7,502.00 in U.S. Currency, which was seized on March 3, 2018, in Archdale, North Carolina, and is currently in the custody of the United States Marshal Service.

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in **Exhibit A**, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 17th day of August, 2018.

>Respectfully submitted,
>
>MATTHEW G.T. MARTIN
>United States Attorney
>
>/s/ Steven N. Baker
>Steven N. Baker
>Assistant United States Attorney
>N.C. Bar No. 36607
>101 S. Edgeworth Street, 4th Floor
>Greensboro, NC 27401
>Phone: (336) 333-5351
>Email: steve.baker3@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

_____
Anthony Cugino
Task Force Officer
Drug Enforcement Administration

**DECLARATION**

I, Anthony Cugino, Task Force Officer with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a Task Force Officer (TFO) with DEA since 2016, and I am currently assigned to the DEA Atlanta Field Division, Greensboro Resident Office. I have been employed as a City of Archdale Police Officer since 2006. In March 2010, I was assigned to the Archdale Police Department Criminal Investigation Division. My primary responsibilities are to investigate drug complaints inside the city limits of Archdale. I have a Bachelor of Science Degree in Criminal Justice from Liberty University. I have received over nineteen-hundred (1900) hours of police related training in the purchase of drug/narcotics through various street level operations, which involved the use of confidential sources. I have also worked numerous cases in an undercover capacity and purchased illegal substances. I have attended a Police Law Institute class, which focused on police search and seizure. I am assigned to the Internet Crimes Against Children (ICAC) Task Force and have in excess of one-hundred (100) hours of training for cases that involve child exploitation. I have completed forty (40) hours of instruction in Interview and Interrogation. I am a Field Training Officer for the Archdale Police

GOVERNMENT EXHIBIT A

Department and have been responsible for training new police officers since February 2009. I have obtained my Advanced Law Enforcement Certificate from the North Carolina Criminal Justice Training and Standards Commission. I have participated in hundreds of cases that involve the violation of the North Carolina General Statutes that govern controlled substances and related crimes. In the time that I have been in law enforcement, I have prepared fifty (50) search warrants and participated in over eighty (80) search warrants. I have made over two hundred fifty (250) drug arrests which resulted in both state and federal prosecutions. I have purchased cocaine, crack cocaine, marijuana, heroin, ecstasy, and methamphetamine while acting in an undercover capacity. Because of my training and experience, I am aware of the different types of controlled substances and the way controlled substances are packaged, distributed, and sold.

2. This declaration is submitted in support of a Verified Complaint of Forfeiture for $7,502.00 in U.S. currency seized on March 3, 2018, from Kevin BEARD.

3. Based on the investigation described below, there is probable cause to believe the $7,502.00 in U.S. currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

4. The facts and circumstances set forth in this Declaration are based upon information provided by other law enforcement officers and my own personal knowledge and experience. Since this declaration is being submitted for a limited purpose, I am not including all the facts and information, which I have learned about or obtained during the course of this investigation.

5.      On March 3, 2018, at approximately 9:42 p.m., Archdale Police Department Officer Z.R. Livingston was conducting stationary patrol on Interstate 85 in Randolph County, North Carolina.  Officer Livingston was located in the median just north of Aldridge Road, and noticed headlights of a vehicle traveling in the middle lane.  Upon seeing Officer Livingston's patrol vehicle positioned in the median, Officer Livingston observed the vehicle drastically reduce speed, making the vehicle "nose-dive."  Officer Livingston observed the vehicle to be a white Kia four-door sedan, occupied by multiple subjects, and that the registration plate was from Pennsylvania.  As the vehicle continued traveling south, Officer Livingston observed that the vehicle did not have registration plate lights in working condition, making the registration plate completely dark.  Officer Livingston followed behind the vehicle onto Interstate 85 to investigate the vehicle further. Officer Livingston was able to obtain the Pennsylvania registration plate identification, and initiated an out-of-state query, revealing the vehicle had an active registration registered to "TA" in Philadelphia, Pennsylvania.   Officer Livingston initiated a traffic stop on the vehicle for non-working registration plate lights.  Upon seeing the activated blue lights, the vehicle exited to the right of the roadway on Interstate 85 southbound just north of mile marker 108.

6.      Officer Livingston made contact with the vehicle's occupants through the passenger side. The passenger front window was down. Officer Livingston observed the vehicle occupied by three male subjects.  Immediately upon making contact with the vehicle, Officer Livingston observed the odor of marijuana emitting from the vehicle.

Officer Livingston also observed that all three of the vehicle's occupants displayed multiple nervous, non-verbal cues.

7. Officer Livingston stated his name and the reason for the stop, but did not mention the odor of marijuana emitting from the vehicle. Officer Livingston then noticed the front seat passenger, Kevin BEARD, to have a marijuana "shake" in his lap. Officer Livingston requested the driver to provide a driver's license. The driver, "JG," provided Officer Livingston with a Pennsylvania identification card (not a valid Pennsylvania driver's license). "JG" advised Officer Livingston he did not have a valid driver's license, nor did any other occupant in the vehicle. "JG" was unable to provide registration for the vehicle. "JG" advised Officer Livingston the vehicle belonged to his girlfriend, and that he was using the vehicle to attend the CIAA tournament in Charlotte, North Carolina. "JG" added he and his friends were returning to Charlotte after shopping at the Four Seasons Mall in Greensboro, North Carolina.

8. Because Officer Livingston observed the odor of marijuana as well as visually seeing the marijuana "shake" present in BEARD's lap, he inquired about the presence of illegal items in the vehicle. Officer Livingston asked specifically if there was marijuana in the vehicle. BEARD, "JG" and "TC" paused and looked around the vehicle and each hesitantly answered "no." Officer Livingston continued to inquire if any additional illegal items were present in the vehicle, which again yielded a negative response from the occupants. Officer Livingston then returned to his patrol vehicle to continue his investigation. At this time, Officer Livingston had obtained probable cause to search the vehicle based on the odor of marijuana emitting from the vehicle as well as his observation

- 4 -

Case 1:18-cv-00716 Document 1-1 Filed 08/17/18 Page 4 of 9

of marijuana shake present in BEARD's lap.  Officer Livingston requested an additional unit to respond.

9. Officer Livingston did another out of state driver query of "JG," which revealed that his license was suspended.  Officer Livingston completed a written citation warning for the non-working registration plate lights.

10. After additional units responded to the scene, Officer Livingston made contact with the driver "JG" on the driver's side of the vehicle.  Officer Livingston asked "JG" to exit the vehicle and step back to the rear of the vehicle.  Officer Livingston explained to "JG" the written citation and asked if he had any questions.  Officer Livingston also verbally warned "JG" of his suspended license.  Officer Livingston explained to "JG" that he observed the odor of marijuana emitting from the vehicle and asked "JG" once more if marijuana was present in the vehicle or on his person.  "JG" responded "no."  Officer Livingston explained to "JG" that he was going to search the vehicle, as well as the occupants in the vehicle.

11. Officer Livingston search both "JG" and "TC," finding a large amount of currency on their persons.

12. Officer Livingston then made contact with BEARD.  Officer Livingston asked BEARD if he had any weapons or illegal items located on his person, and BEARD replied, "no."  In BEARD's front right pocket, Officer Livingston located one gram of marijuana stored in an open clear baggy and a large black folding pocketknife.  Officer Livingston also located two large bundles of U.S. currency with one bundle located in the left interior jacket pocket and the second bundle located in the front left pant pocket.

13. Officer Livingston inquired about the large amounts of money located on each of the occupants. BEARD, "JG" and "TC" all stated they left the mall from shopping. Officer Livingston, however, saw no signs that the individuals had been shopping.

14. Officer Livingston began searching the interior of the vehicle and observed an abundance of marijuana shake throughout the vehicle. He also observed an open container of alcohol in the center console. Officer Livingston opened the trunk of the vehicle and located a large black, silk bag containing what appeared to be a black trash bag. Officer Livingston found three vacuum-sealed bags of marijuana (1,515.5 grams/3.36 pounds) concealed with the black trash bag. The street value of this amount of marijuana is approximately $16,800.

15. All three occupants were detained after Officer Livingston located the vacuum-sealed bags of marijuana. They were transported to the Archdale Police Department for processing, and were then placed in the Randolph County Jail. They were not cooperative and refused to provide any contact or employment information.

16. All of the U.S. Currency was seized as drug proceeds. A total of $2,541.00 was found on "JG's" person; $4,144.00 was found on "TC's" person; and $7,502.00 in was found on BEARD's person.

17. After the stop, Lt. T.P. Coats of the Archdale Police Department conducted a controlled canine scan of the currency with canine Ozzy. Canine Ozzy alerted to the presence of narcotics on all the seized U.S. currency.

18. Lt. Coats has been employed with the Archdale Police Department since November 2008. He was assigned to patrol upon completed of Basic Law Enforcement

Training, and in April 2013 was assigned to the Criminal Interdiction Task Force with the Archdale Police Department. Lt. Coats has completed over nineteen hundred (1900) hours of training in the nine years he has been a police officer. Lt. Coats has approximately one-hundred sixty (160) of hands-on interdiction training. Lt. Coats attended two (2) one-hundred fifty (150) hours of canine handler training at High Point Canine Solutions. One course was for canine Rocky and the other for canine Ozzy. Lt. Coats also completed a forty (40) hour course on interviews and interrogation. Lt. Coats spent over forty (40) hours observing and working with Border Patrol in Falfurrias, Texas and then U.S. Customs at the Port of Entry in McAllen, Texas. During that time, Lt. Coats observed individuals as they came through the checkpoints who were involved in drug trafficking, and view hidden compartments designed to carry and conceal narcotics and U.S. currency. Lt. Coats attended forty-two (42) hours of Comprehensive Roadside Interdiction course. Lt. Coats attended a seventy-six (76) hour Police Law Institute course. Lt. Coats also attended a forty (40) hour National Interdiction Conference in Virginia Beach, Virginia. Lt. Coats also teaches as an instructor for an interdiction course involving searches for hidden vehicle compartments. Lt. Coats has received over three-hundred (300) hours of canine handler training in the use of a narcotic detection canine. Lt. Coats was assigned a dual-purpose canine in March 2011, a single purpose canine in January 2014, and another dual-purpose canine in October 2016. Lt. Coats successfully demonstrated the ability to properly deploy and maintain a police canine. Lt. Coats effectively used this training to locate the following concealed controlled substance: marijuana, heroin, powder and crack cocaine,

methamphetamine, and ecstasy.  Lt. Coats also trains with his current assigned canine Ozzy on a weekly basis under the direction of a certified trainer.

19. Canine Ozzy is a three-year-old Belgian Malinois, a breed specifically selected for their keen senses and ability to be training to detect the odor of controlled substances.  Canine Ozzy has proved to be reliable using his senses to locate narcotic training aids of actual controlled substances including marijuana, heroin, powder and crack cocaine, methamphetamine, and ecstasy.  Canine Ozzy was certified through the National Narcotic Detector Dog Association (NNDDA) in December 2017.  The NNDDA requires the handler and his canine partner to successfully locate unknown narcotics hides of marijuana, cocaine, heroin, and methamphetamine.  Canine Ozzy is trained to sit and state at the area where he detects the odor of a controlled substance listed above.  This behavior is defined as a positive alert or indication.  Canine Ozzy has reliably detected narcotics and U.S. currency that has been concealed in automobiles and residential homes since being placed in service.

20. DEA adopted the individual seizures of U.S. currency and began administrative forfeiture proceedings.  The U.S. Currency seized from "JG" and "TC" was administratively forfeited.  Notice of the forfeiture proceedings for the $7,502.00 in U.S. currency from BEARD was published on an official government internet site ([www.forfeiture.gov](www.forfeiture.gov)) from April 9, 2018 through May 8, 2018.  On May 22, 2018, DEA received a claim to the defendant $7,502.00 in U.S. currency from Kevin BEARD.  As a result, the administrative forfeiture process was terminated and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

21.   The U.S. Marshal's Service has custody of the $7,502.00 in U.S. currency.

22.   Based upon the foregoing, I am of the opinion that there is probable cause to believe that the $7,502.00 in U.S. currency was furnished or intended to be furnished in exchange for a controlled substance, or represents proceeds traceable to such an exchange, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

_____
Anthony Cugino
Task Force Officer
Drug Enforcement Administration